**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **CARLTON HAWKINS and** ) | |
| **MICHELLE A. HAWKINS  his wife** ) | **MDL 2244 (Judge Kinkeade)** |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION NO. _____** |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **DEPUY ORTHOPAEDICS, INC.,** ) | |
| **DEPUY INC., DEPUY INTERNATIONAL** ) | |
| **LIMITED, JOHNSON & JOHNSON,** and ) | |
| **JOHNSON & JOHNSON SERVICES, INC.,** ) | |
| **JOHNSON & JOHNSON INTERNATIONAL** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____/ | |

## COMPLAINT

Plaintiffs, CARLTON HAWKINS and MICHELLE A. HAWKINS, his wife, by and through undersigned counsel, sue Defendants, DEPUY ORTHOPAEDICS, INC.; DEPUY, INC.; DEPUY PRODUCTS, INC.; DEPUY INTERNATIONAL, LIMITED; JOHNSON & JOHNSON; JOHNSON & JOHNSON SERVICES, INC., and JOHNSON & JOHNSON INTERNATIONAL and for their Complaint allege, upon information and belief and based on the investigation to date of their counsel, as follows:

## INTRODUCTION

1.      This is an action for damages incurred by CARLTON HAWKINS and MICHELLE A. HAWKINS, his wife, as a direct result of Defendants' defective development, design, testing, manufacturing, labeling, distribution, advertising, marketing and sale of the DePuy Pinnacle metal-on-metal total hip replacement system ("Pinnacle Device").

1

2.     Plaintiff, CARLTON HAWKINS, has suffered and continues to suffer serious bodily injuries and substantial pain and suffering as a direct and proximate result of the defective Pinnacle Device surgically implanted into his left hip.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332. The matter in controversy is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

5.     Venue is proper under 28 U.S.C. §1391(a).  The events giving rise to the claims set forth in the Complaint occurred in this district.

## PARTIES

6.     Plaintiff, CARLTON HAWKINS, is a resident of Washington, Washington County, District of Columbia.

7.     Plaintiff, MICHELLE A. HAWKINS, is a resident of Washington, Washington County, District of Columbia.

8.     Plaintiff, MICHELLE A. HAWKINS, was legally married to Plaintiff CARLTON HAWKINS at the time of CARLTON HAWKINS' implantation of the Pinnacle Device on March 22, 2005.

9.     Defendant DEPUY ORTHOPAEDICS, INC., is an Indiana Corporation with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581.

10.     Defendant DEPUY, INC., is an Indiana Corporation with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581.

11.     Defendant DEPUY PRODUCTS, INC., is an Indiana Corporation with its principal

place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581.

12.     Defendant, DEPUY INTERNATIONAL, LIMITED, is an international Corporation with its principal place of business at St. Anthony's Road, Beeston, Leeds, West Yorkshire UK LS11 8DT, United Kingdom.

13.     Defendants DEPUY ORTHOPAEDIC, INC., DEPUY, INC., DEPUY PRODUCTS, INC. and DEPUY INTERNATIONAL LIMITED are hereby collectively referred to as "DEPUY."

14.     DEPUY at all times relevant to this Complaint developed, designed, tested, manufactured, labeled, distributed, advertised, marketed, and sold the Pinnacle Device that is the subject of this lawsuit.

15.     Defendant JOHNSON & JOHNSON is a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

16.     Defendant JOHNSON & JOHNSON SERVICES INC., is a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

17.     Defendant JOHNSON & JOHNSON INTERNATIONAL, is a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

18.     Defendants, JOHNSON & JOHNSON, JOHNSON & JOHNSON SERVICES, INC., and JOHNSON & JOHNSON INTERNATIONAL as the parent companies of DEPUY, developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold the Pinnacle Device that is the subject of this lawsuit.

19.     Defendants, DEPUY and JOHNSON & JOHNSON, JOHNSON & JOHNSON SERVICES, INC., and JOHNSON & JOHNSON INTERNATIONAL, are hereby referred to

collectively as "Defendants."

20.     Defendants operate, engage, and conduct business in Washington, District of Columbia.

21.     Defendants engaged in an agreement with one another for the common purpose of developing, designing, manufacturing, labeling, testing, advertising, marketing, and selling the Pinnacle Device.

22.     Defendants shared a common pecuniary interest in deriving a profit from the sale of the Pinnacle Device.

23.     Defendants each had an equal stake in the direction and control of the development, design, manufacturing, marketing, labeling, testing, advertising, and selling of the Pinnacle Device.

## FACTUAL ALLEGATIONS

24.     Defendants' defective device was placed in the stream of interstate commerce when the metal-on-metal Pinnacle Device was implanted in the left hip of Plaintiff, CARLTON HAWKINS, on March 22, 2005.

25.     As a direct and proximate result of Defendants' placement of the product into the stream of commerce, Plaintiff, CARLTON HAWKINS, has suffered and continues to suffer both injuries and damages, including but not limited to, past, present and future physical and mental pain and suffering; past, present and future, medical, hospital, rehabilitative and pharmaceutical expenses; lost wages; and other related damages.

26.     Due to Plaintiff's chronic pain, discomfort, and/or the high levels of metal ions released into his body, tissues and blood, Plaintiff had to undergo hip revision surgery to replace the implant.

27.     All of the injuries and complications suffered by Plaintiff, CARLTON HAWKINS, were caused by the defective design, warnings, construction, and unreasonably dangerous character of the Pinnacle Device that was implanted in him.  Had Defendants disclosed and not concealed the known defects, the early failure rate, the known complications and the unreasonable risk associated with the use of the Pinnacle Device, Plaintiff would not have consented to the use of the Pinnacle Device in his hip replacement surgery.

28.     Plaintiff, CARLTON HAWKINS, was unaware of any causal link between the injuries he has suffered and any wrongdoing on the part of the Defendants due to the faulty and defective nature of the Pinnacle Device and due, in part, to the failure of the Defendants to properly warn him and his physicians about the Pinnacle Device's defective and faulty nature.

29.     Additionally, Plaintiff, CARLTON HAWKINS, is not aware of the precise timing of his injury, given the latent nature of the defects present in the Pinnacle Device manufactured by Defendants.  However, he suffered the following personal and economic injuries as a result of the implantation of the Pinnacle Device: significant and permanent personal injury including, but not limited to, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety and limitation of movement, the need for subsequent hip revision surgery, medical and other expenses, and lost wages or lost earning capacity.

30.     Plaintiff, CARLTON HAWKINS, could not have known that he was injured by excessive levels of chromium and cobalt until after the date he had his blood drawn and he was advised of the results of said blood-work.

31.     The Pinnacle Device is made up of four components: (1) a femoral stem; (2) a femoral head; (3) a plastic (polyethylene) or metal liner; and (4) an acetabulum shell.  The patient's femur bone is hollowed out and the metal femoral stem is inserted inside.  The metal femoral head (or ball) connects to the top of the stem and then makes contact with a liner that is attached to the

interior portion of the metal acetabulum cup (socket).  The acetabulum cup is comprised of titanium metal on its outer shell.  A plastic, ceramic, or cobalt-chromium metal liner is then placed on the inside of the acetabulum cup.  The metal femoral head rotates within the plastic, ceramic, or metal liner, depending on which liner the surgeon selects based on the specific patient's needs. The cobalt-chromium liner is a "metal-on-metal" device since both articulating surfaces —the femoral head (ball) and the acetabulum liner (socket) —are comprised of cobalt-chromium metal.

32.    Had Defendants conducted trials on the Pinnacle Device before it was first released on the market in the early 2000's, they would have discovered, at that time, what Defendants ultimately learned in or around 2007, that the Pinnacle Device results in a high percentage of patients developing metallosis, biologic toxicity, and an early and high failure rate, due to the release of metal particles in the patient's surrounding tissue when the cobalt-chromium metal femoral head rotates within the cobalt-chromium metal acetabulum liner.

33.    In other words, implantation of the Pinnacle Device results in the nearly immediate and systematic release of high levels of toxic metal cobalt-chromium ions into hip implant patient's tissue and bloodstream.  This is because cobalt-chromium metal particles are released by friction from the metal femoral head rotating within the metal liner.  The particles then accumulate in the patient's tissue surrounding the implant giving rise to metallosis, pseudotumors, or other conditions.

34.    The formation of metallosis, pseudotumors, and infection and inflammation causes severe pain and discomfort, death of surrounding tissue and bone loss, and a lack of mobility.

35.    The problems with the Pinnacle Device are similar to the issues that gave rise to Defendants' recall of the ASR Device.  Like the Pinnacle Device, the ASR is a metal-on-metal total hip replacement system that is also prone to early failure and causes metallosis and cobalt toxicity resulting in serious health problems and the need for subsequent revision surgery.  As a

result, in August 2010, Defendants, in acknowledgment of the high failure rate of the ASR, recalled more than 93,000 ASRs worldwide.  Although, similar issues exist with the Pinnacle Devices, Defendants have yet to recall the Pinnacle Devices.

36.     Upon information and belief, Plaintiff, CARLTON HAWKINS, alleges that many recipients of the Pinnacle Device are suffering from elevated levels of chromium and cobalt. Plaintiff, CARLTON HAWKINS, further alleges on information and belief that Defendants are aware that as a result of recipient's use of the Pinnacle Device, recipients have a significantly elevated level of chromium and cobalt in amounts that far exceed the acceptable or recommended safety levels.

37.     Upon information and belief, Plaintiff, CARLTON HAWKINS, states that, to date, Defendants have received at least 1,300 reported complaints related to the Pinnacle Device.

38.     A number of governmental agencies have recognized the problems that are caused by metal-on-metal implants such as the ASR and Pinnacle Devices.  For instance, in April of 2010, the Medicines and Healthcare Products Regulatory Agency ("MHRA") in Britain investigated Defendants' metal-on-metal total hip replacement system after receiving widespread reports of soft tissue reactions and tumor growth in thousands of patients who had received those implants. MHRA has required physicians to establish a system to closely monitor patients known to have metal-on-metal hips by monitoring the cobalt and chromium ion levels in their blood and to evaluate them for related soft tissue reactions.

39.     Similarly, on May 28, 2010, the Alaska Department of Health issued a bulletin warning of the toxicity of defendants' metal-on-metal total hip replacement systems.  The State of Alaska, like the MHRA, identified the need for close medical monitoring, surveillance and treatment of all patients who had received these and similar metal-on-metal implants.

40.     Despite the public knowledge to the contrary, Defendants continued to

misrepresent the Pinnacle Device as a high-quality, safe and effective hip replacement product in their marketing and promotional materials.  This is despite the fact that Defendants have known for years that the Pinnacle Device poses a danger to patients that have it implanted.

41.     As a result, Defendants continue to sell the Pinnacle Device to doctors who implant them in countless numbers of patients, with an unreasonably high percentage of those patients being forced to endure serious injury from metallosis, pseudotumors, and biologic toxicity, among other complications.  These patients are reporting severe pain and discomfort and the need for one or more complicated revision surgeries resulting in lifelong health problems caused by the defective Pinnacle device.

## DEFENDANTS' PINNACLE DEVICE IS 510(K) APPROVED AND THEREFORE THE FDA DID NOT REVIEW THE PINNACLE DEVICE FOR SAFETY AND EFFECTIVNESS

42.     The Pinnacle Device is a Class III medical device.  Class III devices are those that operate to sustain human life, are of substantial importance in preventing impairment of human health, or pose potentially unreasonable risks to patients.

43.     The Medical Device Amendments ("MDA") to the Food, Drug, and Cosmetics Act of 1938, in theory, requires Class III medical devices, including the Pinnacle Device, to undergo premarket approval by the FDA.  This process obligates the manufacturer to design and implement a clinical investigation and to submit the results of that investigation to the FDA.

44.     Premarket approval is a rigorous process that requires a manufacturer to submit what is typically a multivolume application which includes, among other things, full reports of all studies and investigations of the safety and effectiveness of the device that has been published or should reasonably be known to the applicant; a full statement of the components ingredients, properties and principle or principles of operation of the device; samples or device components

8

required by the FDA; and a specimen of the proposed label for the device.

45.     The FDA may grant premarket approval only if it finds that there is reasonable assurance that the medical device is safe and effective and must weigh any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.

46.     A medical device on the market prior to the effective date of the MDA —a so-called "grandfathered device"— was not required to undergo premarket approval.  In addition, a medical device marketed after the MDA's effective date may bypass the rigorous premarket approval process if the device is "substantially equivalent" to a "grandfathered," pre-MDA device (i.e., a device approved prior to May 28, 1976).  This exception to pre-market approval is known as the "510(k)" process and simply requires the manufacturer to notify the FDA under section 510(k) of the MDA of its intent to market a device at least ninety (90) days prior to the device's introduction to the market, and to explain the device's substantial equivalence to a pre-MDA predicate device. The FDA may then approve the new device for sale domestically.

47.     Rather than being approved for use by the FDA pursuant to the rigorous premarket approval process, the Pinnacle Device was certified to be sold on the basis of Defendants' claim that under section 510(k) of the MDA it was "substantially equivalent" to another, older, metal-on-metal hip implant device that defendants sold and implanted prior to the enactment of the MDA in 1976.  *See* 21 U.S.C. §360 *et seq.*

48.     As such, under the 510(k) process, Defendants were able to market the Pinnacle Device with virtually no clinical or non-clinical trial or FDA review of the implant for safety and effectiveness.

## COUNT I
## STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT
### (Against All Defendants)

49.     Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

50.     Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of orthopedic devices including the Pinnacle Device.

51.     The Pinnacle Device surgically implanted in plaintiff and developed, designed, tested, manufactured, labeled, distributed, advertised, marketed, sold, and supplied by Defendants was defective in its manufacture and construction when it left the hands of Defendants, in that it deviated from product specifications and/or applicable federal requirements for these medical devices, posing a serious risk that it could fail early in patients therefore giving rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the additional risks of complications and death from such further surgery.

52.     As a direct and proximate result of Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold, by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS, was seriously and severely injured in and about her head, neck, back, body and limbs and was thereby rendered sick, sore, lame, and otherwise disabled or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof, Plaintiff, CARLTON HAWKINS, has in the past suffered and will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

53.     That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS'
use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled,
distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal
requirements, Plaintiff, CARLTON HAWKINS, has in the past undergone and will in the future
undergo painful and extensive medical care and treatment, the release of metal and/or metal ions
into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of
motion and the need for subsequent hip revision surgeries, and has in the past incurred and will in
the future incur, medical bills and expenses attendant to the injuries, including, but not limited to,
the expense of hospitalization, medical care and treatment, rehabilitative care and treatment,
radiological studies, and surgical treatments.

54.     That as further direct and proximate result of the incident complained of, Plaintiff,
CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the
ability to earn money in the future.  These losses are permanent and continuing in nature and
Plaintiff will suffer these losses in the future.

55.     That as further direct and proximate result of the incident complained of,
MICHELLE A. HAWKINS has been deprived of the services, society and consortium of her
husband, CARLTON HAWKINS.

56.     Defendants' actions and omissions as alleged in this Complaint constitute a flagrant
disregard for human life, so as to warrant the imposition of punitive damages.

57.     Plaintiff, CARLTON HAWKINS, seeks actual and punitive damages from
Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble
and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief

as the Court deems proper.

## COUNT II
## STRICT PRODUCT LIABILITY – DESIGN DEFECT
## (Against All Defendants)

58.     Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

59.     Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of orthopedic devices including the Pinnacle Device.

60.     The Pinnacle Device, manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation or it was more dangerous than an ordinary consumer would expect, and/or it failed to comply with federal requirements for these medical devices, posing a serious risk that it could fail early in patients, therefore giving rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the additional risk of complications and death from such surgery.

61.     The foreseeable risks associated with the design or formulation of the Pinnacle Device, include, but are not limited to, the fact that the design or formulation of the Pinnacle Device is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner, and/or it failed to comply with federal requirements.

62.     As a direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of the Pinnacle Device, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, and/or its failure to comply with federal requirements, Plaintiff, was seriously and severely injured in and about her head, neck, back, body and limbs and was thereby rendered sick, sore, lame and otherwise disabled, or in the alternative, the injuries

aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof, Plaintiff, CARLTON HAWKINS, has in the past suffered and will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

63.     That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS, has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of motion and the need for subsequent hip revision surgeries,  and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including but not limited to the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

64.     That as further direct and proximate result of the incident complained of, Plaintiff, CARLTON HAWKINS, has in part sustained loss of earnings and will sustain the loss of the ability to earn money in the future.  These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

65.     That as further direct and proximate result of the incident complained of, MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

66.     Defendants' actions and omissions as alleged in this Complaint demonstrate a flagrant disregard for human life, which warrants the imposition of punitive damages.

67.     Plaintiffs seek actual and punitive damages from Defendants as alleged herein

WHEREFORE, Plaintiff s demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## STRICT PRODUCT LIABILITY – FAILURE TO WARN
## (Against All Defendants)

68.     Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

69.     The DePuy Pinnacle Device was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert consumers, including Plaintiff, CARLTON HAWKINS, herein, of the dangerous risks and reactions associated with the Pinnacle Device, including but not limited, to its propensity to cause component loosening, component mal-alignment, infections, fracture of the bone, dislocation, metal sensitivity and pain, subjecting Plaintiff, CARLTON HAWKINS, to risks that exceeded the benefits of the Pinnacle Device, including but not limited to the risks of developing serious and dangerous side effects, including but not limited to component loosening, component mal-alignment,  infections, fracture of the bone, dislocation, metal sensitivity and pain, irritation and discomfort, as well as the  need for additional procedures to remove and replace the Pinnacle Device, as well as other severe and permanent health consequences, notwithstanding the Defendants' knowledge of an increased risk of these injuries and side effects over other hip arthroplasty devices.

14

70.     At the time of Plaintiff, CARLTON HAWKINS' receipt  and/or use of the Pinnacle Device, the Pinnacle Device was being used for the purposes and in a manner normally intended, namely for hip arthroplasty.

71.     Plaintiff, CARLTON HAWKINS, could not, by the exercise of reasonable care, have discovered the defects herein mentioned, and perceived their danger.

72.     Defendants, as manufacturers and/or distributors of the Pinnacle Device, are held to the level of knowledge of an expert in the field.

73.     The warnings that were given by the Defendants were not accurate, clear and/or were ambiguous.

74.     The warnings that were given by the Defendants failed to properly warn physicians of the increased risks, subjecting Plaintiff, CARLTON HAWKINS, to risks that exceeded the benefits of the Pinnacle Device, including but not limited to the risks of developing serious and dangerous side effects, including but not limited to component loosening, component mal-alignment, infections, fracture of the bone, dislocation, metal sensitivity and pain, irritation and discomfort, as well as the  need for additional procedures to remove and replace the Pinnacle Device, as well as other severe and permanent health consequences, notwithstanding the Defendants' knowledge of an increased risk of these injuries and side effects over other hip arthroplasty devices.

75.     Plaintiff, CARLTON HAWKINS, individually and through his physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

76.     Defendants had a continuing duty to warn Plaintiff, CARLTON HAWKINS, of the dangers associated with the Pinnacle Device.

77.     Had Plaintiff, CARLTON HAWKINS, received adequate warnings regarding the risks of the Pinnacle Device, he would not have used it.

78.     As a direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of the Pinnacle Device, and Plaintiff's reliance on Defendants' representations regarding the character and quality of the Pinnacle Device and/or the failure to comply with federal requirements, Plaintiff was seriously and severely injured in and about his head, neck, back, body and limbs and was thereby rendered sick, sore, lame and otherwise disabled or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof; Plaintiff, CARLTON HAWKINS, has in the past suffered and will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

79.     That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS, has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of motion and the need for subsequent hip revision surgeries,  and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including but not limited to the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

80.     That as further direct and proximate result of the incident complained of, Plaintiff, CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the

ability to earn money in the future.  These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

81.     That as further direct and proximate result of the incident complained of, MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

82.     Defendants' actions and omissions as alleged in this Complaint demonstrate a flagrant disregard for human life, which warrants the imposition of punitive damages.

83.     Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## NEGLIGENCE
## (Against All Defendants)

84.     Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

85.     Defendants had a duty to exercise reasonable care in the development, design, testing, manufacture, labeling, distribution, advertisement, marketing and sale of the Pinnacle Device into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events and/or a duty to comply with federal requirements.

86.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of the Pinnacle Device into interstate commerce in that Defendants knew or should have known

that the product caused significant bodily harm and was not safe for use by consumers, and/or through failure to comply with federal requirements.

87.     Despite the fact that Defendants knew or should have known that the Pinnacle Device posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market the Pinnacle Device for use by consumers and/or continued to fail to comply with federal requirements.

88.     Defendants knew or should have known that consumers such as Plaintiff, CARLTON HAWKINS, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above, including the failure to comply with federal requirements.

89.     As a direct and proximate result of Defendants' negligence, Plaintiff, CARLTON HAWKINS, was seriously and severely injured in and about his head, neck, back, body and limbs and was thereby rendered sick, sore, lame and otherwise disabled or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof, Plaintiff, CARLTON HAWKINS, has in the past suffered and will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

90.     That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff CARLTON HAWKINS, has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of

motion and the need for subsequent hip revision surgeries,  and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including but not limited to the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

91.    That as further direct and proximate result of the incident complained of, Plaintiff, CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the ability to earn money in the future.  These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

92.    Defendants' conduct as described above, including but not limited to, its failure to adequately design and manufacture, as well as its continued marketing and distribution of the Pinnacle Device when it knew or should have known of the serious health risks it created and/or the failure to comply with federal requirements, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages.

93.    That as further direct and proximate result of the incident complained of, MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

94.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V
## BREACH OF EXPRESS WARRANTY
### (Against All Defendants)

95.    Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

96.    Defendants expressly warranted that the Pinnacle Device was a safe and effective orthopedic device for those patients requiring a hip replacement.

97.    The Pinnacle Device, developed, designed, tested, manufactured, labeled, distributed, advertised, marketed, supplied  and sold, by Defendants was defective in that, when it left the hands of Defendants, it did not conform to representations made by Defendants concerning the product and/or with applicable federal requirements.

98.    The Pinnacle Device developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold, by Defendants, did not conform to these express representations because it caused serious injury to Plaintiff, CARLTON HAWKINS, when used as recommended and directed.

99.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff, CARLTON HAWKINS, was seriously and severely injured in and about his head, neck, back, body and limbs and was thereby rendered sick, sore, lame, and otherwise disabled or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof, Plaintiff, CARLTON HAWKINS, has in the past suffered and will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

100.    That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled,

distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS, has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of motion and the need for subsequent hip revision surgeries,  and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including but not limited to the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

101.    That as further direct and proximate result of the incident complained of, MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

102.    That as further direct and proximate result of the incident complained of, Plaintiff, CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the ability to earn money in the future.  These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

103.    Defendants' conduct as described above, including, but not limited to, its failure to adequately design and manufacture, as well as its continued marketing and distribution of the Pinnacle Device when it knew or should have known of the serious health risks it created and/or the failure to comply with federal requirements, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages.

104.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief

as the Court deems proper.

## COUNT VI
## BREACH OF IMPLIED WARRANTY
## (Against All Defendants)

105.    Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained

in the preceding paragraphs as though fully set forth herein.

106.    At the time Defendants developed, designed, tested, manufactured, labeled,

distributed, advertised, marketed and sold the Pinnacle Device, for use by the Plaintiff, Defendants

knew of the use for which the Pinnacle Device was intended and impliedly warranted the product

to be of merchantable quality and safe for such use and that its design, manufacture, labeling, and

marketing complied with all applicable federal requirements.

107.    Plaintiff, CARLTON HAWKINS, and/or his physicians reasonably relied upon the

skill and judgment of Defendants as to whether the Pinnacle Device was of merchantable quality

and safe for its intended use and upon Defendants' implied warranty as to such matters, including

that it was in compliance with all federal requirements.

108.    Contrary to such implied warranty, DePuy's Pinnacle Device was not of

merchantable quality or safe for its intended use, because the product was defective as described

above, and/or it failed to comply with federal requirements.

109.    As a direct and proximate result of Defendants' breach of warranty, the Plaintiff,

CARLTON HAWKINS, was seriously and severely injured in and about his head, neck, back,

body and limbs and was thereby rendered sick, sore, lame, and otherwise disabled or, in the

alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a

previous existing defect or infirmity; as a direct result thereof, Plaintiff CARLTON HAWKINS,

has in the past suffered and will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

110.    That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS, has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of motion and the need for subsequent hip revision surgeries,  and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including but not limited to the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

111.    That as further direct and proximate result of the incident complained of, Plaintiff, CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the ability to earn money in the future.  These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

112.    Defendants' conduct as described above, including but not limited to its failure to adequately design and manufacture, as well as its continued marketing and distribution of the Pinnacle Device when it knew or should have known of the serious health risks it created and/or the failure to comply with federal requirements, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages.

113.    That as further direct and proximate result of the incident complained of, MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

114.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT VII
### NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

115.    Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

116.    In the exercise of reasonable care, Defendants should have known that its Pinnacle Device failed to comply with federal requirements for safe design and manufacture and/or was in other ways out of specification, yet Defendants negligently misrepresented to the Plaintiff CARLTON HAWKINS and/or her physicians that its device was safe and met all applicable design and manufacturing requirements.

117.    As a result of Defendants' reckless and/or negligent misrepresentations regarding the effects of the Pinnacle Devices, the running statute of limitations has been suspended with respect to claims that Plaintiff has brought or could bring.  Plaintiff had no knowledge of Defendants' wrongdoing until he became aware of the ASR recall.

118.    The Plaintiff, CARLTON HAWKINS, and/or his physicians reasonably relied to their detriment upon Defendants' misrepresentations and omissions in its labeling, advertisements, and promotions concerning the serious risks posed by these products.  The Plaintiff and/or their physicians reasonably relied upon Defendants' representations that the Pinnacle Device was safe for use.

119.    As a direct and proximate result of Defendants' negligent misrepresentations and omissions and/or its failure to disclose its violations of federal requirements applicable to its Pinnacle Device, Plaintiff, CARLTON HAWKINS, used Defendants Pinnacle Device and Plaintiff was seriously and severely injured in and about his head, neck, back, body and limbs and was thereby rendered sick, sore, lame and otherwise disabled or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof, Plaintiff, CARLTON HAWKINS, has in the past suffered and will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

120.    That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS', has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of motion and the need for subsequent hip revision surgeries,  and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including, but not limited to, the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

121.    That as further direct and proximate result of the incident complained of, Plaintiff CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the ability to earn money in the future.  These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

122.    That as further  direct  and  proximate  result  of  the  incident  complained  of,

MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

123.    Defendants' actions and omissions as alleged in this Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

124.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT VIII**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

125.    Plaintiff CARLTON HAWKINS readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

126.    Defendants falsely and fraudulently represented to the medical and healthcare community and to the Plaintiff, and/or the FDA, and the public in general, that the subject product had been tested and was found to be safe and/or effective for hip arthroplasty treatment.

127.    The representations made by the Defendants were, in fact, false.

128.    When said representations were made by the Defendants, they knew those representations to be false and willfully, wantonly and recklessly disregarded whether the representations were true.

129.    Defendants knowingly and intentionally made false representations of material fact to Plaintiff, CARLTON HAWKINS, including, but not limited to, claims that the Pinnacle Devices were safe and effective hip replacement systems.  For example, Defendants claimed that the device was based on a "strong clinical history," and that the devices would allow patients to "return to

their more active lifestyles."  Defendants also advertised that the Hip Implant Device is "[d]esigned for active lifestyles."  They further asserted that the "DePuy metal-on-metal (MoM) articulation system is leading the way in advanced technology.  Through years of careful engineering, research and expertise, we've created a total hip replacement solution that offers low wear and high stability."  They further touted that "[w]ith DePuy Advanced Bearing options, you can help your patients never stop moving."  Defendants also indicated that "[l]arge diameter bearings improve hip range of motion and stability for higher function and a reduction in the occurrence of revision surgery.

130.    These representations were made by the Defendants with the intent of defrauding and deceiving the Plaintiff, CARLTON HAWKINS, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense  and/or purchase the subject product for hip arthroplasty treatment, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff and the public in general.

131.    At the time the aforesaid representations were made by the Defendants and, at the time Plaintiff, CARLTON HAWKINS, was treated with the Pinnacle Device, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

132.    In reliance upon said representations, Plaintiff, CARLTON HAWKINS, was induced to, and did use the subject product, thereby sustaining severe and permanent personal injuries including, but not limited to, significant pain, irritation and discomfort, as well as other severe and permanent health consequences, notwithstanding the Defendants' knowledge of an increased risk of these injuries and side effects over other hip arthroplasty devices.

133.   Defendants knew and were aware or should have been aware that the Pinnacle Device had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

134.   Defendants knew or should have known that the Pinnacle Device had a potential to, could, and would, cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

135.   Defendants brought the subject product to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff, CARLTON HAWKINS.

136.   As a direct and proximate result of Defendants' fraudulent misrepresentations and/or its failure to disclose its violations of federal requirements applicable to its Pinnacle Device, Plaintiff, CARLTON HAWKINS, used Defendants' Pinnacle Device and the Plaintiff was seriously and severely injured in and about his head, neck, back, body and limbs and was  thereby rendered sick, sore, lame and otherwise disabled or in the alternative the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof, Plaintiff, CARLTON HAWKINS, has in the past suffered an will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which conditions are permanent in nature.

137.   That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS' use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS, has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of

motion and the need for subsequent hip revision surgeries, and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including but not limited to the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

138.    That as further direct and proximate result of the incident complained of, Plaintiff, CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the ability to earn money in the future. These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

139.    That as further direct and proximate result of the incident complained of, MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

140.    Defendants' actions and misrepresentations as alleged in this Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

141.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IX
## FRAUDULENT CONCEALMENT AND FRAUDULENT OMISSIONS
### (Against All Defendants)

142.    Plaintiff, CARLTON HAWKINS, readopts and realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

143.   At all times during the course of dealing between the Defendants, Plaintiff, Plaintiff's healthcare providers, and/or the FDA, the Defendants concealed the safety of the subject product for its intended use.

144.   Defendants knew or were reckless in not knowing that its concealment was false.

145.   Defendants fraudulently concealed and intentionally omitted material information, in representations to Plaintiff, CARLTON HAWKINS, Plaintiff's healthcare providers, and/or the FDA, including but not limited to, the fact that:

    a.   The subject product was not as safe as other similar products and devices;

    b.   That the subject product was defective, and that it had the propensity to cause serious and dangerous side effects, including but not limited to component loosening, component mal-alignment, infections, fracture of the bone, dislocation, metal sensitivity and pain, irritation and discomfort, the need for additional procedures to remove and replace the Pinnacle Device, as well as other severe and permanent health consequences, notwithstanding Defendants' knowledge of an increased risk of these injuries and side effects over other hip arthroplasty devices;

    c.   That the subject product was manufactured negligently;

    d.   That the subject product was manufactured defectively;

    e.   That the subject product was manufactured improperly;

    f.   That the subject product was designed negligently;

    g.   That the subject product was designed defectively; and

    h.   That the subject product was designed improperly.

146.   Defendants were under a duty to disclose to Plaintiff, CARLTON HAWKINS, Plaintiff's healthcare providers, and/or the FDA the defective nature of the subject product,

including but not limited to the risk of developing serious infection associated with the use of the Pinnacle Device.

147.    Defendants had sole access to material facts concerning the defective nature of the subject product and its propensity to cause serious and dangerous side effects, and hence, caused damage to persons who used the Pinnacle Device, including Plaintiff, CARLTON HAWKINS, in particular.

148.    Defendants' concealment and omissions of material facts concerning, inter alia, the safety of the Pinnacle Device was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, CARLTON HAWKINS, and Plaintiff's physicians, hospitals and healthcare providers into reliance on the use of the Pinnacle Device, and to cause them to purchase, prescribe, dispense and/or use the subject product.

149.    Defendants knew that Plaintiff, CARLTON HAWKINS, Plaintiff's healthcare providers, and/or the FDA had no way to determine the truth behind the Defendants' concealment and omissions, as set forth herein.

150.    Plaintiff, CARLTON HAWKINS, as well as Plaintiff's doctors, healthcare providers, and/or hospitals, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by the Defendants.

151.    As a direct and proximate result of Defendants' fraudulent concealment and omissions and/or its failure to disclose its violations of federal requirements applicable to its Pinnacle Device, Plaintiff, CARLTON HAWKINS, used Defendants' Pinnacle Device and the Plaintiff was seriously and severely injured in and about his head, neck, back, body and limbs and was thereby rendered sick, sore, lame and otherwise disabled or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity; as a direct result thereof, Plaintiff, CARLTON HAWKINS, has in the past suffered and

will in the future suffer great pain and anguish of body and mind and loss of capacity for the enjoyment of life, all of which condition are permanent in nature.

152.    That as further direct and proximate result of the Plaintiff, CARLTON HAWKINS'S  use of Defendants' Pinnacle Device, as developed, designed, tested, manufactured, labeled, distributed, advertised, marketed and sold by Defendants and/or the failure to comply with federal requirements, Plaintiff, CARLTON HAWKINS, has in the past undergone and will in the future undergo painful and extensive medical care and treatment, the release of metal and/or metal ions into his body tissues and blood, pain, distress, anxiety, limitation of movement, loss of range of motion and the need for subsequent hip revision surgeries,  and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries, including but not limited to the expense of hospitalization, medical care and treatment, rehabilitative care and treatment, radiological studies, and surgical treatments.

153.    That as further direct and proximate result of the incident complained of, Plaintiff, CARLTON HAWKINS, has in the past sustained loss of earnings and will sustain the loss of the ability to earn money in the future.  These losses are permanent and continuing in nature and Plaintiff will suffer these losses in the future.

154.    That as further direct and proximate result of the incident complained of, MICHELLE A. HAWKINS has been deprived of services, society and consortium of her husband, CARLTON HAWKINS.

155.    Defendants' actions and omissions as alleged in this Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

156.    Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief

as the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

a.  For compensatory damages incidental to Plaintiff CARLTON HAWKINS' use of the Pinnacle Device in an amount to be determined at trial;

b.  For punitive and/or treble damages against Defendants.

c.  For pre-judgment and post-judgment interest to Plaintiffs;

d.  For the costs and expenses of this litigation to Plaintiffs;

e.  For all applicable state and federal statutory damages;

f.  For an award of reasonable attorneys' fees and costs to Plaintiffs as provided by law;

g.  For medical monitoring, whether denominated as damages or in the form of equitable relief; and

h.  For such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims in this action.

Respectfully submitted
Counsel for Plaintiffs,

s/Jeffrey L. Haberman
Jeffrey L. Haberman
Florida Bar No. 157550
Schlesinger Law Offices, P.A.
1212 SE 3rd Avenue
Fort Lauderdale, Florida 33316
PH: (954) 320-9507
Fax: (954)320-9509
E-mail: cpatrick@schlesingerlaw.com